## Long Estate

*Steven J. Fishman,* for estate.
*Hubert X. Gilroy,* for petitioners.
*Gary E. French,* for Teresa Ann Long.

SHEELY, *P.J.,* August 17, 1990 — Lloyd F. Long (decedent) executed a will on January 12, 1983. At the time of execution, decedent was married to Mary M. Long. The decedent provided, through the will, for his entire estate to be distributed equally among three individuals: one-third of the estate to decedent's wife, Mary Long; one-third to Paul Miller, his stepfather and named executor of the will; one-third to Elva M. Kennedy, his aunt and objector in these proceedings.

Decedent was subsequently divorced from Mary Long on November 29, 1983, and then married Teresa Ann Long on August 16, 1987. After only two and one-half months of marriage, decedent died November 5, 1987, leaving neither issue nor parents. Decedent did not, subsequent to his divorce from Mary Long in 1983, make a new will; therefore, his 1983 will was offered for probate. Pursuant

to 20 Pa.C.S. §2203, Teresa Ann Long filed of record an election against the will.

In making a final accounting, the executor, Paul Miller, followed the mandates of the Probate, Estates and Fiduciaries Code (PEFC). Section 2507(3) of the PEFC reads:

"(3) *Marriage.* If the testator marries after making a will, the surviving spouse shall receive the share of the estate to which he would have been entitled had the testator died intestate, unless the will shall give him a greater share." 20 Pa.C.S. §2507(3).

The executor correctly determined that section 2507(3) was applicable because decedent married after making his will. Therefore, his surviving spouse, Teresa Long, was entitled to a share equal to what she would have received had decedent died intestate. The executor then correctly applied 20 Pa.C.S. §2102(1), governing intestate succession, which grants the surviving spouse the entire estate if the decedent dies intestate, leaving no surviving issue or parent. Accordingly, the executor's final accounting proposed a 100-percent distribution of the estate to Teresa Long. Both Paul Miller and Elva Kennedy were effectively denied their one-third shares under the will.

Objections were filed on behalf of Elva Kennedy and an auditor's hearing was held on April 23, 1990. It became apparent during the hearing that there was little if any factual dispute. The hearing ended without testimony and the issues were then presented in Argument Court on July 18, 1990.

## DISCUSSION

At issue in this case is the constitutionality of section 2507(3) of the PEFC which provides that if a decedent marries after making a will, and never changes that will, the surviving spouse is entitled to

the share she would have received had the decedent died intestate.

Elva Marie Kennedy (objector) argues that because section 2507(3) invalidates testamentary provisions and creates an irrebuttable presumption that decedent would have wanted his current spouse to share in his estate, the statute denies her due process and is therefore unconstitutional under the Fifth and 14th Amendments to the United States Constitution.

Objector also claims that section 2507(3) violates the Equal Protection Clause of the 14th Amendment because it impermissibly creates two classifications for surviving spouses: one where the surviving spouse's husband executed a will before marriage; the other where the husband executed a will subsequent to marriage.

For the reasons described below, we reject both of objector's arguments.

## I

### Due Process

We start with the well established maxim that there exists a strong presumption of constitutionality of all statutes enacted by the legislature, *Estate of Cox,* 327 Pa. Super. 479, 485, 476 A.2d 367, 370 (1984), and that the moving party "bears the burden of demonstrating that the statute 'clearly, palpably and plainly' violates the constitution." *Id.* (quoting *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 154, 425 A.2d 419, 421 (1981)). All doubts are to be resolved in favor of sustaining the legislation. *Cox* at 485, 476 A.2d at 371.

'The 14th Amendment prohibits the state from depriving a person of life, liberty, and property without due process of law. U.S. Const. amend. XIV; *Ingraham v. Wright,* 430 U.S. 651, 672 (1977).

The concept of due process is rather flexible. It is, however, fundamental that except in emergency situations, "due process requires that when a state seeks to terminate [a protected] interest. . ., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Bell v. Burson,* 402 U.S. 535, 542 (1971). (citations omitted; emphasis in original)

An examination of a due-process problem requires a two-stage analysis: first, the court must identify whether the asserted individual interest is a protected one, encompassed within the 14th Amendment's protection of life, liberty or property. *Ingraham v. Wright,* 430 U.S. 651, 672 (1977). Then, if a protected interest is implicated, the court must determine what procedures constitute "due process of law." *Id.*

Because we conclude that the objector has not asserted an interest which is encompassed within the 14th Amendment's protections, we need not even reach the question of what procedures are necessary to protect her due process rights.

As enunciated in *Board of Regents v. Roth,* 408 U.S. 564 (1972):

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the 14th Amendment's protection of liberty and property. . . . [T]he range of interests protected by procedural due process is not infinite." *Id.* at 569-70.

In order to have a property interest in something, it is important to point out that one "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. The objector in this case did not have a legitimate claim of entitlement to one-

third of decedent's estate. Instead, she merely had an *expectation* that she would take under decedent's will.

In *In re Estate of Cavill,* 459 Pa. 41, 329 A.2d 503 (1974), our Supreme Court held that the Mortmain statute[1] in this Commonwealth's Wills Act was unconstitutional. Because the majority opinion held the statute violated the Equal Protection Clause, it did not have occasion to rule on the claim that it was violative of the Due Process Clause. Justice Pomeroy's dissenting opinion, however, disagreed with the majority's analysis of the Equal Protection Clause and proceeded to address the due process argument. Justice Pomeroy started with the proposition that the right to receive property by will is not a natural right but one conferred by the legislature. *Id.* at 426, 329 A.2d at 511 (Pomeroy, *J.,* dissenting), citing *Tack's Estate,* 325 Pa. 545, 191 Atl. 155 (1937). And since the legislature determined that charitable and religious organizations have no right to inherit property unless the decedent survives for 30 days after making his will, the "[f]ailure to grant a right which is broader is not a denial of due process of law." *Cavill* at 426, 329 A.2d at 511 (Pomeroy, *J.,* dissenting).

We find Justice Pomeroy's opinion persuasive to the issue we resolve here. There is no natural right to receive property through a will. Any inheritance is accomplished through the legislature granting a person the power to will his property to another. In fact, it is even possible for the state to declare an escheat of all a decedent's property. See *Tack's Estate* at 548, 91 Atl. at 156. Furthermore, objector

---

1. 20 Pa.C.S. §2507(1) (repealed). The Mortmain statute mandated the invalidation of any bequests or devises to religious or charitable organizations if the decedent's will was executed within 30 days of his death and someone who would benefit by the invalidation of the will objects.

merely had an *expectation* that she would receive one-third of decedent's property. She had no present interest in decedent's estate. She had no title or right to sell the property. She merely expected to receive the property upon decedent's death. Aside from the application of 20 Pa.C.S. §25407(3), granting decedent's new wife an intestate share of the estate, a number of other unpredictable events could have occurred which would have invalidated objector's gift. The most obvious event would be decedent changing his will. Also, had objector predeceased decedent, objector's part of the estate would have been shared by the remaining two beneficiaries.[2] Any one of these possibilities, including the possibility of 20 Pa.C.S. §2507(3) being invoked, as it was, leads us to the conclusion that objector did not have a property interest in her share of decedent's estate. Instead, she had merely an expectation of receiving a property interest. Although "the property interests protected by procedural due process extend well beyond actual ownership of real estate chattels, or money," *Board of Regents v. Roth,* 408 U.S. 564, 571-2 (1972), citing *Connell v. Higginbotham,* 403 U.S. 207, 208 (1971), we do not believe due process protections extend to such a tenuous interest as that held by objector. The Due Process Clause was not intended to protect an individual's expectation in receiving property. See *Board of Regents v. Roth,* 408 U.S. at 577. Hence, objector's argument on this ground must be rejected.

## II

### Equal Protection

Objector further attacks the constitutionality of 20 Pa.C.S. §2507(3) based on the Equal Protection

2. Decedent's will reads: "In the event any of said beneficiaries shall predecease me, I direct his or her share be divided equally between the survivors thereof."

Clause of the 14th Amendment to the United States Constitution.[3]

In analyzing an equal protection question, we must first determine whether the state has created a classification for the unequal distribution of benefits or imposition of burdens. See *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986). Objector claims that 20 Pa.C.S. §2507(3), which creates two classifications of surviving spouses (one where the surviving spouse marries the decedent and the decedent fails to execute a new will; the other where the decedent does execute a new will), ultimately creates unconstitutional classifications of other beneficiaries. Under the first classification, if the decedent does not update his will subsequent to marriage, the surviving spouse is entitled to receive the share she would have received had the decedent died intestate. This situation may result in, as it did in the present case, the invalidation of gifts to other beneficiaries. We find that the legislature has in fact created a classification scheme which treats surviving spouses differently and which may ultimately injure other named beneficiaries in a decedent's will. However, the Equal Protection Clause does not deny states the power to treat different classes of persons in different ways, providing that classification passes the applicable degree of scrutiny. *Estate of Cox*, 327 Pa. Super. 479, 486, 476 A.2d 367, 371 (1984).

---

3. Objector similarly argues that section 2507(3) violates the Pennsylvania Constitution. We, however, need not specifically address this issue because our Supreme Court has held that the content of the Equal Protection Clause embodied in the United States Constitution is not significantly different from the prohibition against special laws embodied in the Pennsylvania Constitution. *Baltimore & Ohio R. Co. v. Commissioner, Dept. of Labor*, 461 Pa. 68, 83, 334 A.2d 636, 643 (1975).

The next step in our analysis, therefore, is to determine the appropriate degree of scrutiny to which the statute is to be subjected. *Commonwealth v. Bell,* 512 Pa. 333, 516 A.2d 1172 (1986); *Estate of Cox,* 327 Pa. Super. 479, 486, 476 A.2d 367, 371 (1984). We must choose between three classification schemes, each one calling for a different level of scrutiny. If the challenged statute threatens a fundamental right or liberty or affects a suspect class, the court undertakes a strict scrutiny of the statute. *Eisenstadt v. Baird,* 405 U.S. 438, 447, n.7 (1972); *Estate of Cox,* 327 Pa. Super. 479, 486, 476 A.2d 367, 371 (1984). The second level of scrutiny, sometimes referred to as "heightened scrutiny," *Id.,* is employed if the statute threatens an important, but not fundamental, interest, or affects a "quasi-suspect" class. See *Craig v. Boren,* 429 U.S. 190 (1976); *Commonwealth v. Bell,* 512 Pa. 333, 516 A.2d 1172 (1986); *Estate of Cox,* 327 Pa. Super. 479, 476 A.2d 367 (1984). Finally, if the statute threatens neither a fundamental nor important right nor affects a suspect or quasi-suspect class, a minimal amount of scrutiny is to be applied. *Hodel v. Indiana,* 452 U.S. 314 (1981); *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732 (1984).

Objector admits that this last level of review is applicable. Cf. *In re Estate of Cavill,* 459 Pa. 411, 329 A.2d 503 (1974) (employing lowest level of scrutiny to determine constitutionality of Mortmain statute); *Estate of Cox,* 327 Pa. Super. 479, 476 A.2d 367 (1984) (employing lowest level of scrutiny to determine constitutionality of part of Commonwealth's intestate statute). See also, *Commonwealth v. Hicks,* 502 Pa. 344, 466 A.2d 613 (1983) (lowest level of scrutiny employed in distribution of eco-

nomic benefits). Therefore, our review is limited to determining whether section 2507(3) is rationally related to a legitimate state purpose. *Dandridge v. Williams,* 397 U.S. 471 (1970); *Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988); *Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 515 A.2d 1358 (1984). In other words, we must inquire "only into the existence of a proper purpose and means rationally designed to further that goal." *Estate of Cox,* 327 Pa. Super. 479, 487, 476 A.2d 367, 371 (1984).

Our next step then, is to determine whether the Commonwealth had a legitimate purpose in enacting section 2507(3). The most obvious purpose behind section 2507(3) is to protect a surviving spouse from the negligence of the decedent in failing to update his will after marriage. The statute makes a presumption that had the decedent thought about it, or had the chance, he would have provided for his current spouse. It is clear that this is a legitimate purpose. "A legislature has the power to enact all manner of legislation with respect to wills and trusts subject, of course, to the rights and limitations ordained in the Constitution of the United States and the Constitution of Pennsylvania." *In re Estate of Scott,* 418 Pa. 332, 336, 211 A.2d 429, 431 (1965). See also, *Labine v. Vincent,* 401 U.S. 532, 537 (1971) (the rules for intestate succession "may or may not reflect the intent of [decedents]. . . . But the choices reflected by the intestate succession statute are choices which it is within the power of the state to make"); *Harris v. Zions Bank Co.,* 317 U.S. 447, 450 (1943) ("the settlement and distribution of decedent's estates, and the right to succeed to the ownership of realty and personalty are peculiarly matters of state law. . .").

The only question left to be decided is whether the means employed in section 2507(3) are rationally related to the goal of protecting the surviving spouse. The United States Supreme Court has defined this task in the following terms: "We will not overturn . . . a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97 (1979).

Objector fails to comprehend the nature of the rational-basis test. In her brief, objector rhetorically asks the following questions:

"Is it *rational* to benefit a spouse who happens to marry her husband after his will has been executed to the tune of 100 percent of the estate? What *rational basis* does the legislature have in completely disregarding a testator's intentions and desires by granting a surviving spouse 100-percent share [sic] of the estate in complete contradiction to the testator's will?" Objector's brief at 12. (emphasis in original)

The test, however, is not whether the *goal* of the legislature is rational; the legislature's goal need only be "legitimate." See *Dandridge v. Williams,* 397 U.S. 471 (1970). As noted before, the protection of surviving spouses and the regulation of inheritance are legitimate goals for the legislature to act upon. Instead, it is the *means* employed by the statute which must be rationally related to the legislature's goal. *Id.*

We conclude that the means employed in section 2507(3) are rationally related to achieving protection of surviving spouses not provided for in a decedent's will. By providing a surviving spouse with an intestate share of the decedent's estate, the legisla-

ture has chosen adequate means to protect surviving spouses. Though this may ultimately invalidate other beneficiary's gifts, as it did in the present case, and may not always represent the intentions of decedents, these means are certainly rationally related to the legislature's ultimate goal.

Objector suggests there may be better means to protect surviving spouses and that section 2507(3) ignores the possibility that decedent may have provided for his surviving spouse by other means. However, as the court in *Estate of Cox,* 327 Pa. Super. 479, 476 A.2d 367 (1984), made clear:

"Where a legitimate purpose has been identified and a rational relationship between that purpose and the means chosen to foster it has been established, our inquiry into whether the statute violates the equal protection clause is at an end. . . . It is beyond our scope of review to ascertain whether an alternative means would have more appropriately served the sovereign's purpose." *Id.* at 489, 476 A.2d at 371-2. (citations omitted)

We, therefore, conclude that 20 Pa.C.S. §2507(3) does not violate the Equal Protection Clause of the 14th Amendment.

## CONCLUSION OF LAW

Teresa Ann Long, the surviving spouse of Lloyd F. Long, deceased, is entitled to receive 100 percent of the estate of the decedent.

## FINAL DECREE

And now, August 17, 1990, the objection of Elva Kennedy to the first and final account of Paul Miller, executor of the estate of Lloyd F. Long, is dismissed. Upon presentation to the court, the court will confirm the first and final account and schedule of distribution which proposes to give the entire

estate to Teresa Ann Long, the surviving spouse of Lloyd F. Long.