**ESTATE OF Anna E. FRIDENBERG, Deceased.**

**Appeal of Wachovia Bank, N.A.**

Superior Court of Pennsylvania.

Argued March 31, 2009.

Filed Aug. 24, 2009.

Reargument Denied Oct. 30, 2009.

Carl A. Solano, Philadelphia, for appellant.

Claudia M. Tesoro, Asst. Dist. Atty., Philadelphia, for the Com., Participating Party.

BEFORE: STEVENS, KLEIN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Wachovia Bank, N.A., appeals from the order of the Philadelphia County Court of Common Pleas, Orphans' Court Division, denying its application for certain commissions on trust principal as compensation for trust administration services. Appellant challenges the Orphans' Court's conclusion that such commissions were barred by *In re Williamson's Estate*, 368 Pa. 343, 82 A.2d 49 (1951). We reverse the order of the Orphans' Court and remand for further proceedings consistent with this opinion.

¶ 2 This case involves a testamentary trust established under the will of testatrix Anna E. Fridenberg, dated February 14, 1938.[1] The twentieth paragraph of the will

---

1. Ms. Fridenberg also executed two codicils to the will amending certain specific bequests,

provided that the residue of Ms. Fridenberg's estate and certain property over which she exercised powers of appointment was to be held in trust to pay the net income to certain named annuitants, all since deceased. The balance of the net income was to be paid to the Jewish Hospital Association of Philadelphia for the perpetual upkeep, maintenance, and support of the Fridenberg Memorial Surgical Building. The testatrix named Fidelity—Philadelphia Trust Company and Philip N. Goldsmith as executors of her estate and trustees under the will. Ms. Fridenberg died on March 26, 1940.

¶ 3 The Jewish Hospital Association of Philadelphia was eventually consolidated, along with several other entities, into the Albert Einstein Medical Center.[2] By decree dated February 18, 1981, the Orphans' Court authorized the demolition of the Fridenberg Memorial Surgical Building and directed that a surgical floor of a proposed patient care tower be designated the "Fridenberg Memorial Surgical Floor." In an adjudication dated March 5, 1981, the Orphans' Court directed that the income from the trust be used to support the surgical floor.

¶ 4 Appellant Wachovia eventually became the corporate successor to Fidelity—Philadelphia Trust Company. On January 12, 2006, following the death of another individual trustee, Bruce Taylor, Wachovia filed the third account under the Fridenberg trust, covering the period from the end of the second account in 1978 through March 16, 2005, the date of Mr. Taylor's death. In it, Wachovia sought commissions from principal for both itself and Mr. Taylor for the period from June 1998 through March 2005.[3]

¶ 5 The Attorney General filed twelve objections to the third account. (*See* Objections of Commonwealth of Pennsylvania, Office of Attorney General, as *Parens Patriae*, to Third Account of Wachovia Bank, N.A., 4/28/06). Although eleven objections were subsequently withdrawn, the Attorney General continued to object to Appellant's request for commissions on market value, paid from principal, because its corporate predecessor as trustee, Fidelity—Philadelphia Trust Company, which also served as executor of the will, had previously accepted a fee for its executor services.

¶ 6 Under section 45 of the Fiduciaries Act of June 7, 1917, P.L. 447 (the 1917 Act),[4] in force at the time of the death of Ms. Fridenberg, a trustee was prohibited from receiving a second "commission" for trust services if the trustee had previously received compensation for services as executor of the will under which the testamentary trust was established. The 1917 Act was repealed by the Act of April 10, 1945, P.L. 189 (1945 Act). However, our Supreme Court, in the case of *In re Williamson's Estate, supra,* decided that the repeal of section 45 by the 1945 Act was not to be applied retroactively, as a denial of due process under the Fourteenth Amendment to the United States Constitu-

---

none of which are at issue in this appeal.

2. See *In re: Articles of Consolidation for the Formation of the Albert Einstein Medical Center,* February 5, 1952, Court of Common Pleas, December Term, 1951, No. 2918. The other consolidated entities were the Mount Sinai Hospital Association and the Northern Liberties Hospital Association. *See id.*

3. Commissions for Mr. Taylor are not at issue in this appeal.

4. The prohibition against dual commissions in section 45 of the Fiduciaries Act of 1917 was itself a re-enactment of a prohibition contained in the Act of March 17, 1864, P.L. 53 (the 1864 Act).

tion on a theory of implied contract. *Id.* at 54.

¶ 7 After the *Williamson* case, our Legislature again amended the law, enacting the Act of May 1, 1953, P.L. 190, (1953 Act), which, like the 1945 Act, also sought to allow "dual commissions." Later, our Supreme Court, in *In re Scott's Estate*, 418 Pa. 332, 211 A.2d 429 (1965), construed the continued applicability of the holding in *Williamson* in light of the 1945 Act and the 1953 Act.[5] Against a claim that the rule was mere *dicta*, the Court concluded, "Irrespective of whether this part of the *Williamson's Estate* Opinion was or was not dictum, we find it persuasive and applicable." *Id.*, at 432 (footnote omitted). The Court expressed concern that "retroactive application of the Acts of 1945 and 1953, at this late date, would not only greatly increase litigation but would also open a Pandora's box[.]" *Id.* at 433; (*see also* Orphans' Ct. Op. at 6).

¶ 8 However, two years afterward, Chief Justice Bell, who was also the authoring judge in *Scott*, again writing for the majority, stated:

Several Justices of this Court (including the present writer) and the Legislature and the Orphans' Court of Philadelphia have from time to time pointed out the unfairness of this harsh rule and their desire to see it eliminated or further modified. Realistically speaking, it is a matter of common knowledge that finan-

cial and modern conditions have changed so greatly since the Act of 1864 and the Act of 1917, *supra*, that we should limit *Williamson Estate*, and *Scott Estate*, and [*In re*] *Coulter*['*s*] *Estate, supra,* [379 Pa. 209, 108 A.2d 681 (1954)] **to their facts,** and under our King's Bench powers, and under the powers granted to us by the Act of May 20, 1891, [ ] P.L. 101, 12 P.S. § 1164, should allow, if earned, the payment of a fair and reasonable *interim* commission on principal to a (non-executor) trustee of a long-term trust. Without such a policy rule to cope with modern conditions and to "make both ends meet," how otherwise in these days can a corporate trustee continue to exist as a fiduciary, and why otherwise would an individual trustee, or indeed a bank or trust company, ever accept a long-term trust?[]

*In re Ehret's Estate*, 427 Pa. 584, 235 A.2d 414, 421 (1967) (emphasis added). Accordingly, the decision in *Ehret* permitting earned interim commissions on principal effectively ended the precedential authority of *Williamson* and *Scott* by limiting those cases to their facts, even while preserving the executor/trustee restriction under then prevailing legislation.[6]

¶ 9 The legislation was subsequently amended. Section 7185 of the Probate, Estates and Fiduciaries Code (PEF Code), enacted as the Act of June 30, 1972, P.L. 508, No. 164, provided for "reasonable and

---

**5.** The Supreme Court observed,

Neither the appellants nor the appellee nor the Judges of the Orphans' Court agree as to exactly what *Williamson's Estate* decided, and what parts thereof were dicta and should not be followed, or in any event should be overruled.[FN6]

FN6. Judge Lefever in his Opinion in the instant case said that all of the Judges of the Orphans' Court of Philadelphia County believed in Williamson's Estate that additional compensation for ordinary services should

be allowed out of principal to a trustee who also served as executor, and they would have awarded additional compensation if they had had the authority and power.

*In re Scott's Estate*, 418 Pa. 332, 211 A.2d 429, 431 (1965) (emphasis in original).

**6.** *See also In re Breyer's Estate*, 475 Pa. 108, 379 A.2d 1305, 1308, n. 3 (1977) (recognizing interim commissions permitted out of principal under 1953 Act, even for trusts established before 1953, citing *Ehret*)

just" compensation to the trustee, and permitted graduated compensation based on market value.[7] Section 7185 was amended by the Act of February 18, 1982, P.L. 45, No. 26, to provide, in part, for compensation out of principal. Section 14 of the Act of October 12, 1984, P.L. 929, No. 182, provided that Section 7185 of the PEF Code, as amended by the Act of February 18, 1982, *supra,* "shall apply to all trusts regardless of whether the trust was created before, on or after February 18, 1982." Act of October 12, 1984, § 14 (emphasis added).

¶ 10 Our Legislature adopted the Uniform Trust Act by the Act of July 7, 2006, P.L. 625, No. 98.[8] Section 7768(c) of that Act provided:

> **(c) Entitlement not barred.**—None of the following shall bar a trustee's entitlement to compensation from the income or principal of the trust:
>
> (1) The trust is perpetual or for any other reason has not yet terminated.
>
> (2) The trustee's term of office has not yet ended.
>
> (3) **The trustee of a testamentary trust also acted as a personal representative of the settlor and was or might have been compensated for services as a personal representative from the principal of the settlor's estate.**

20 Pa.C.S.A. § 7768 (emphasis added). The Joint State Government Commission Comment to Section 7768 explained, in pertinent part:

> This section is an amalgamation of UTC [Uniform Trust Code] § 708 and former 20 Pa.C.S. § 7185 and codifies existing Pennsylvania law. [ ] Subsection (c)(3) repeals the contrary rule of *In re Williamson's Estate,* 368 Pa. 343, 82 A.2d 49 (1951), as to the few trusts that might still be affected by the rule.

20 Pa.C.S.A. § 7768. *Joint State Government Commission Comment—2005.*[9]

¶ 11 This course of legislative history notwithstanding, the Attorney General concluded that Appellant Wachovia, as successor to Fidelity–Philadelphia Trust Company, was barred from collecting any fee paid on principal, "based on *Williamson's Estate,*" and the omission of any specific provision for trust fees in the Fridenberg will. (*See* Objections, at 10). Appellant and the Attorney General entered into a Stipulation of Facts on June 3, 2008, agreeing, *inter alia,* that Wachovia's corporate predecessor, received "principal compensation for its service as Executor" of the estate of Ms. Fridenberg, and preserving the Attorney General's objection to the payment of compensation for trustee services based on principal to Appellant Wachovia.[10] (*See* Stipulation of Facts, 6/3/08).

---

7. The concept of "reasonable and just" compensation for trustee services has been a part of Pennsylvania law since at least 1836. *See* Act of June 14, 1836, P.L. 628, § 29 (formerly 20 P.S. § 3271); *see also Williamson, supra* at 5. The current statute is 20 Pa.C.S.A. § 7768.

8. The Act became effective in 120 days, November 6, 2006. As the Act was not in effect until after the period for which Appellant seeks compensation, the statute is not directly at issue in this appeal. It is, however, referred to by the Orphans' Court and in the briefs of both parties, as well as the *amicus*

curiae brief of the Pennsylvania Bankers Association.

9. A fuller history of the numerous amendments to the PEF Code and succeeding statutes, all indisputably seeking to eliminate the restrictions on dual commissions, is set forth in the Orphans' Court Opinion, at pages 3 to 11. (*See also* Appellant's Brief, at 14–19); (Commonwealth's Brief, at 12–18); (*Amicus Curiae* Brief of Pennsylvania Bankers Association, at 6–9).

10. Because the trust includes assets attributable to powers of appointment and a rever-

¶ 12 On June 30, 2008, the Orphans' Court sustained the Attorney General's objection, holding the requested payment to be "barred by the decisions in the matters of *Williamson Estate* [ ]; *Scott Estate* [ ]; and, *Ehret Estate* [ ]." (Orphans' Ct. Op. at 12). Otherwise, it confirmed the account absolutely. The Orphans' Court rejected the argument that this case law had been superseded by the numerous legislative amendments, concluding: "The Legislature could not do in 1982 and 2006 what it was constitutionally prohibited from doing in 1945 and 1953." (*Id.* at 14.). This timely appeal followed.

¶ 13 Appellant raises three questions on appeal:

(1) UNDER THE PROBATE, ESTATE AND FIDUCIARIES CODE, WHICH AUTHORIZES PAYMENT OF REASONABLE COMPENSATION TO TRUSTEES OUT OF INCOME OR PRINCIPAL, IS A TRUSTEE OF A PERPETUAL TRUST WHO [sic] RECEIVED COMMISSIONS FROM PRINCIPAL AS THE EXECUTOR OF THE SETTLOR'S ESTATE IN 1941 PROHIBITED FROM RECEIVING COMMISSIONS FROM PRINCIPAL OF THE TRUST FOR TRUSTEE SERVICES RENDERED AFTER ENACTMENT OF THE PEF CODE?

(2) DOES THE RETROACTIVE APPLICATION OF LEGISLATION AUTHORIZING SUCH COMMISSIONS VIOLATE A TRUST BENEFICIARY'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTRUCTION, WHERE:

(A) THE INTEREST ALLEGEDLY DENIED BY THE LEGISLATION IS A SUPPOSED RIGHT, EMBODIED IN LEGISLATION REPEALED IN 1945, TO RECEIVE TRUSTEE SERVICES WITHOUT PAYING REASONABLE COMPENSATION FOR THEM; AND

(B) THE LEGISLATURE EXPRESSLY PROVIDES THAT ITS STATUTES AUTHORIZING COMMISSIONS FROM PRINCIPAL SHOULD BE APPLIED RETROACTIVELY, AND IT HAS A RATIONAL BASIS FOR SO PROVIDING?

(3) MAY THE ATTORNEY GENERAL, WHO IS CHARGED WITH DEFENDING STATUTES ENACTED BY THE LEGISLATURE, INSTEAD ADVOCATE THAT THE LEGISLATION BE DECLARED INVALID AND NOT ENFORCED, AND THEREBY OPPOSE PAYMENT OF COMMISSIONS AUTHORIZED BY THE LEGISLATION?

(Appellant's Brief, at 2).

¶ 14 Our standard of review for decisions of the Orphans' Court is well settled.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

---

sionary interest, only about 27% consists of assets from Ms. Fridenberg's original estate principal on which Fidelity–Philadelphia Trust received an executor's fee. Therefore, in the stipulation the Attorney General reduced the scope of its opposition to $46,731.64, or 27% of the overall trust fee.

(*See* Stipulation, at ¶ 3). The Attorney General does not oppose the remainder of the fee, and concedes that a successor trustee "would not be prohibited from charging and getting additional principal commissions." (Commonwealth's Brief, at 29).

However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Bouks*, 964 A.2d 4, 5–6 (Pa.Super.2008) (citations and quotation marks omitted).

¶ 15 In the case on appeal here, Appellant argues that the requested fees are permitted by the plain language of at least five different statutes, enacted from 1945 to 2006, allowing reasonable compensation for trust services to executor/ trustees, several explicitly retroactive. It asserts that approval of the contested trust fees pursuant to such legislation would not offend the federal due process clause. We agree.

¶ 16 Further, it contends that the Attorney General improperly challenged the constitutionality of the legislation enabling payment of the fees at issue rather than defending it, and the trial court erred in sustaining such objections. Because Appellant failed to raise this issue with the trial court or preserve it properly for our review, we find it to be waived.

¶ 17 Preliminarily, we observe that in this case no material facts are in dispute. The Orphans' Court noted that "the Attorney General does not object to the reasonableness of the questioned payments[.]" (Orphans' Ct. Op., at 11). Rather, as already observed, the Orphans' Court concluded that payments were barred by *Williamson, Scott* and *Ehret*; the Orphans' Court further concluded that "[i]t is not in the best interest of any charity, or, of the public, to let Trustees collect commissions which are clearly and unequivocally barred by well-established law." (*Id.* at 12, 15).

¶ 18 First, we observe that the express intent of *Ehret* to limit *Williamson* and *Scott* to their facts eliminated the perceived constraint of *Williamson* as precedential authority. *See Ehret, supra,* at 421. Secondly, in light of the lengthy legislative history recited by the Orphans' Court itself documenting the unfaltering intent of the Legislature to permit "dual commissions," even for previously established trusts, the Orphans' Court's contention that the "commissions [ ] are **clearly and unequivocally** barred by well-established law," (Orphans' Ct. Op., at 15), is more conclusory than compelling. Thirdly, the Orphans' Court's reliance on *Williamson* as preclusive of any **subsequent** legislation is misplaced; our Supreme Court in 1951 was only addressing a 1945 statute. The *Williamson* Court in 1951 could not, and did not attempt to, address the constitutionality of the future PEF Code or amendments to it, let alone later statutes. At most, *Williamson* could provide analytic principles to apply to the subsequent legislation. Nevertheless, the Orphans' Court declined to engage in any analysis of the subsequent legislation.

¶ 19 The Orphans' Court erred by substituting its summary conclusion for constitutional analysis. It is well-settled that legislation is presumed to be constitutional. "A lawfully enacted statute commands a presumption of constitutionality and should be upheld unless it **clearly, palpably, and plainly** violates the constitution." *Commonwealth v. Teeter,* 961 A.2d 890, 896 (Pa.Super.2008) (emphasis added). *See also* 1 Pa.C.S.A. § 1922(3) (presumption that General Assembly does not intend to violate Constitution of United States or of Commonwealth). Furthermore, "[a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Moreover, statutes are to be construed whenever possible to uphold their constitutionality." *DePaul v. Commonwealth,* 969 A.2d 536, 545 (Pa.2009) (citations and

internal quotation marks omitted). Therefore, the Orphans' Court, in concluding that "[t]he Legislature could not do in 1982 and 2006 what it was constitutionally prohibited from doing in 1945 and 1953," (Orphan's Ct. Op., at 14), erred by assuming that *Williamson* was still controlling authority and by failing to give due deference to the presumption of constitutionality, as well as by disregarding the unequivocal intent of our Legislature to abolish the dual compensation prohibition.

¶ 20 Moreover, we note that even apart from *Ehret's* limitation of *Williamson* to its facts, the application of the rule in *Williamson* is highly problematical here.[11] *Williamson* struck down the repeal of Section 45 as interfering with vested rights by implied contract between the trustee, the life tenant, and remaindermen in violation of due process. Then–Justice Bell, who, as previously noted later wrote both *Scott* and *Ehret* as Chief Justice, commented, **"Concededly there never was any written or oral or specific contract;** and the contract which the majority **implies and which it refrains from defining** is nothing but a creation or invention of the Court." *Williamson, supra* at 57 (Bell, J.,

concurring & dissenting) (emphasis in original). In any event, *Williamson* is distinguishable on its facts.

¶ 21 In the instant case the implied contract issue is moot. Einstein Medical Center, the "remainderman," does not object to the trust fee request.[12] Therefore, there can be no question of a due process violation premised on an abrogation of an implied contract by a change in trust fees, the facts assumed in *Williamson*.[13] For all these reasons, Appellant's first argument merits relief. Appellant is entitled to the requested trustee fees, concededly reasonable, in compensation for its ordinary services as permitted under the statutes in effect at the time the services were rendered.

¶ 22 In its second question, Appellant specifically argues that the application of subsequent legislation authorizing the payment of the trust fees requested, even to an executor/trustee of a pre–1945 trust, does not violate the due process cause of the Fourteenth Amendment. As the question, in effect, merely addresses the underlying assertions in *Williamson*, the

**11.** We note that the *Williamson* majority called on the **Legislature** to revise the general system of fiduciary compensation, even while invalidating a previous effort of the Legislature to do so. *See Williamson, supra* at 54.

**12.** Similarly, the argument that the rights and expectations of the parties, including the scheme of compensation, were fixed forever in 1940, does not comport with the other facts of the case. The Jewish Hospital Association, the original residuary beneficiary of the trust, no longer exists as such. It was consolidated into the Albert Einstein Medical Center. The trust was established for the perpetual upkeep of The Fridenberg Memorial Surgical Building, which also no longer exists. The Orphans' Court let it be demolished; the beneficiary is now the Fridenberg Memorial Surgical Floor. The original Fidelity–Philadelphia Trust Company no longer ex-

ists; indeed, Appellant Wachovia, its corporate successor, has now been acquired by Wells Fargo.

**13.** To be sure, the Attorney General now argues he is advocating on behalf of the general public, not merely a specific charity. (Commonwealth's Brief, at 27 n. 20, 31–33). However, the Attorney General does not argue that there is an implied contract with the general public precluding the payment of the fees at issue. Nor does the Attorney General argue the fees requested are objectively unreasonable. To the contrary, the Attorney General concedes that if Appellant were to resign, "some additional principal compensation probably would have to be paid to its successor in the future (and most likely neither Einstein **nor the Attorney General would have grounds to object).**" (*Id.* at 29) (emphasis added).

second issue is really only a generalized re-phrasing of the first issue. Appellant also argues that the legislative changes permitting compensation are reasonable as recognition of the dramatic changes in the nature of trust administration. (Appellant's Brief, at 32). This argument tracks the observation Chief Justice Bell made in *Ehret* in 1967. *See id., supra,* at 421. For our current purposes Appellant's point may be simply summarized as asserting a paradigmatic shift from mere conservation of principal, with the incidental production of limited income, to a total return theory of trust administration which seeks appreciation of principal as well as production of income from a variety of financial and investment instruments.[14] Appellant maintains that the substantial increase in administrative duties for trustees forms a rational basis for the legislative amendment of restrictions on trustee compensation created under different economic conditions dating back to the Civil War era. Neither the Orphans' Court nor the Attorney General disputes this assessment. Therefore, we merely note here, as the *Williamson* Court itself did, that it is the prerogative of the Legislature to amend the law to respond to such changes.[15]

¶ 23 For the reasons already discussed in Appellant's first issue, we agree with Appellant's second issue. We further note that the Orphans' Court's conclusion of unconstitutionality, tracking the language of *Williamson,* is premised expressly and exclusively on the Orphans' Court's reading of *Williamson, Scott,* and *Ehret.* (*See* Orphans' Ct. Op. at 12–13). However, we have already concluded that, under *Ehret,*

*Williamson* is not controlling precedent. The Orphans' Court gives no independent reason for the due process assertion. Neither does the Commonwealth. Indeed, as noted below, the Attorney General disclaims any challenge to "the constitutionality of any legislative enactments on their face." (Commonwealth's Brief, at 30). Therefore, Appellant's second issue also merits relief.

¶ 24 Finally, Appellant questions whether "the Attorney General, who is charged with defending statutes enacted by the Legislature," may "instead advocate that the legislation be declared invalid and not enforced, and thereby oppose payment of commissions authorized by the legislation?" (Appellant's Brief, at 2).

¶ 25 Preliminarily, we observe that Appellant claims it raised this issue through its "filing of the third account and in its brief in response to the Attorney General's objections." (*Id.,* at 39 n. 8). Appellant's citation actually refers to its Memorandum of Law in Support of Trustees Compensation, dated June 3, 2008 (Memorandum). A review of this Memorandum confirms that Appellant's actual argument is merely that "[t]he Authority of the Attorney General is not absolute." (Memorandum, 6/3/08, at 10, R.R. 198a). The Memorandum asserts that trustees are entitled to reasonable compensation for their services, and that the Attorney General does not have "absolute veto power" over the agreements made by a charity. It then cites to a series of Orphans' Court decisions, not binding on this Court, as examples of court approval of trustee compensation over the

---

14. For a fuller discussion of this point, see *amicus curiae* brief of Pennsylvania Bankers Association, at pages 18 to 30.

15. "It may well be that present conditions demand that the system requires general revision. If this be true, such radical change should be made by the **Legislature** and not by the Court." *Williamson, supra* at 54 (emphasis in original).

Attorney General's objections. (*See id.*, at 10–12).

¶ 26 Nothing in this argument addresses the specific question raised on appeal, namely, the Attorney General's authority, *vel non*, to challenge the constitutionality of a statute. In fact, the only reference to constitutionality apart from the issues presented in *Williamson* itself, in the entire Memorandum outside of the referenced pages, is a vague and, candidly, rather obscure, passing reference to "providing for a system of virtual representation that will address such constitutional issues as there may be with respect to trusts, unlike the Fridenberg Trust, where not all interests have vested." (*Id.*, at 14). By its own terms, the passage excludes the Fridenberg trust. Finally, the third account itself does not address constitutionality at all. Therefore, Appellant has failed to demonstrate that it raised the issue of the Attorney General's authority to challenge the constitutionality of statutes. In fact, the Orphans' Court did not address this question. Accordingly, Appellant's third issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa.Super.2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.").

■ ¶ 27 Moreover, the Attorney General expressly denies advocating the unconstitutionality of any statute. "In this litigation, no one is pressing a direct, frontal attack on the constitutionality of any legislative enactments on their face." (Commonwealth's Brief, at 30). Also, "[t]he Attorney General has not argued, and is not arguing, that the 'PEF Code'

... or any of the pre-[ ] Code statutes ... are unconstitutional as written." (*Id.* at 31). Rather, the Commonwealth argues that "as a matter of law, in a case with possible constitutional ramifications, the Attorney General is expected to base his litigation position on 'controlling' caselaw, whichever way it goes. That is what he did here." (Commonwealth's Brief, at 33).[16] As our Supreme Court observed in *Ehret*, "Sir Edward Coke pointedly stated: 'Reason is the life of the law,' to which I add: 'Where reason faileth, both Justice and Respect for the Law are imperiled.'" *Ehret's Estate, supra* at 421. We note that Coke, as quoted in *Ehret*, was citing an ancient legal maxim, the full text of which is also relevant here: "*Ratio est legis anima, mutata legis ratione mutatur et lex.*" ("Reason is the soul of the law; when the reason of the law has been changed, the law is also changed.").

¶ 28 Order reversed. Case remanded for disposition in accordance with this opinion. Panel jurisdiction relinquished.

¶ 29 Judge KLEIN files a dissenting opinion.

**DISSENTING OPINION BY KLEIN, J.:**

¶ 1 Although I agree that the majority's outcome is both logical and preferable in light of the duties required of a trustee/executor, I cannot agree that *In re Ehret's Estate*, 427 Pa. 584, 235 A.2d 414 (1967), has effectively rendered *In re Williamson's Estate*, 368 Pa. 343, 82 A.2d 49 (1951), and *In re Scott's Estate*, 418 Pa. 332, 211 A.2d 429 (1965), obsolete. Therefore, I believe that our Supreme Court's rule is still in effect. If a person or entity took a principal commission as executor *at*

---

16. In view of Appellant's waiver and our overall decision, we decline to address its assertion that the Commonwealth's reply is a

"distinction without a difference." (*See* Appellant's Reply Brief, at 7).

*the time* there was a prohibition against dual commissions, that person or entity is barred from taking a principal fee from the trust although the rule changed before the fee against the trust principal was claimed. Therefore, as much as I agree in principle with the majority, I believe we are required to follow the rule until the Supreme Court specifically allows us to do otherwise. Therefore, I must dissent.

¶ 2 Briefly, I note that *Ehret's Estate* does not overrule *Williamson's Estate* or *Scott's Estate*. In *Ehret's Estate*, the appellant bank, never an executor of the estate, sought compensation for its work as trustee for the estate. Until the lawsuit, the bank had never been paid any compensation or commission for its work. In this situation, our Supreme Court allowed the bank to be fairly compensated for the work it had performed. *Ehret's Estate* did not involve the dual commissions at issue in *Williamson's Estate* and *Scott's Estate*, which are at issue here. The Supreme Court, at least as it was constituted in 1967 when *Ehret's Estate* was decided, may have been signaling its willingness to revisit the dual commission rule, but for whatever reason, it never has.

¶ 3 The issue of retroactive application of the Acts of 1945 and 1953 has been answered in the negative by *Scott's Estate*, and I do not believe that we are at liberty to ignore that decision. While I have no argument otherwise with the majority's analysis and conclusion, we have no authority to reach that conclusion. It is for the Supreme Court to change its rule.

¶ 4 Therefore, I respectfully dissent.