33 A.3d 581

**ESTATE OF Anna E. FRIDENBERG, Deceased**

v.

**Appeal of COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued March 8, 2011.

Decided Nov. 23, 2011.

284

Timothy James O'Shaughnessy, for Albert Einstein Hospital.

John G. Knorr III, Calvin Royer Koons, Office of Attorney General, Harrisburg, Claudia M. Tesoro, PA Office of Attorney General, Philadelphia, for Commonwealth of Pennsylvania.

Carl A. Solano, Schnader Harrison Segal & Lewis, L.L.P., Kathleen Anne Stephenson, Pepper Hamilton, L.L.P., Ralph G. Wellington, Schnader Harrison Segal & Lewis, L.L.P., Philadelphia, for Wachovia Bank, N.A.

Donna Marie Doblick, Dianna Calaboyias Wyrick, Reed Smith, LLP, Pittsburgh, for Appellee Amicus Curiae, Pennsylvania Bankers Association.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

The Commonwealth of Pennsylvania, Office of the Attorney General [1] appeals from the Superior Court's order reversing the Philadelphia County Court of Common Pleas Orphans' Court division's order, which held Wachovia Bank was not entitled to receive commissions from principal for its trust administration services. For the following reasons, we affirm.

Anna Fridenberg executed her last Will and Testament February 14, 1938; she passed away March 26, 1940. Relevant to this appeal, paragraph 20 of her will provided the residue of her estate and other property, over which she held powers of appointment through her father and brother's wills, was to be held in trust for five named individuals, no longer living. The remainder of the net income was to be given to the Jewish Hospital Association of Philadelphia "for the per-

1. The Office of the Attorney General appears through its role as *parens patriae* for charities.

petual upkeep, maintenance and support of the Fridenberg Memorial Surgical Building." [2]

Ms. Fridenberg appointed Philip N. Goldsmith and Fidelity–Philadelphia Trust Company as executors of her estate and trustees under her will. Wachovia is the corporate successor to Fidelity; Mr. Goldsmith died in 1952 and was eventually replaced by Bruce Taylor as the individual trustee. As a result of Mr. Taylor's death, Wachovia filed the third account of the Fridenberg trust January 12, 2006, detailing the trust activities from the close of the second accounting in 1978 to March 16, 2005, the day of Mr. Taylor's death. The accounting also included requests for commissions to be paid out of principal for Wachovia and Mr. Taylor. The Attorney General objected to this request, arguing the law in effect at the time the trust was created prevented parties who served as both executors and trustees under a will from receiving more than one commission from principal. The Attorney General noted Wachovia's corporate predecessor already received a commission from principal for its services; therefore, Wachovia was not entitled to another commission from principal.

The orphans' court sustained the objection, holding the law at the time the trust was created barred more than one commission from principal, despite subsequent changes in the law that now allow more than one commission. Wachovia appealed, and the Superior Court reversed, holding, *inter alia*, the numerous legislative enactments over the past half-century permitting more than one commission for previously established trusts were constitutionally valid. The Attorney General petitioned for allowance of appeal, which we granted, limited to the following issue: "Whether testamentary trustees who were paid a commission on principal for executor

2. The Jewish Hospital Association of Philadelphia was later consolidated with other entities to form the Albert Einstein Medical Center. In 1981, the Fridenberg Memorial Surgical Building was demolished pursuant to a Philadelphia County Orphans' Court decree. In substitution, the decree ordered a surgical floor of a proposed patient care tower be designated the "Fridenberg Memorial Surgical Floor." The orphans' court later ordered the income from the trust be used to sustain the surgical floor.

services prior to 1945 may receive an additional commission on principal for their ordinary services as trustees." *Estate of Fridenberg*, 606 Pa. 72, 994 A.2d 1096 (2010). As this issue presents a pure question of law, our scope of review is plenary, and our standard of review is *de novo*. *See American and Foreign Insurance Company v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 2 A.3d 526, 533 (2010).

As the Superior Court noted, the changes to the law regarding payment to executors and trustees have been numerous. Section 45 of the Fiduciaries Act of June 7, 1917, No. 193, § 45, 1917 P.L. 447, 511 (repealed 1945), was the law at the time the trust was created, and provided:

> In all cases where the same person shall, under a will, fulfill the duties of executor and trustee, it shall not be lawful for such person to receive or charge more than one commission upon any sum of money coming into or passing through his hands, or held by him for the benefit of other parties; and such single commission shall be deemed a full compensation for his services in the double capacity of executor and trustee: Provided, that any such trustee shall be allowed to retain a reasonable commission on the income he may receive from any estate held by him in trust as aforesaid.

*Id.* However, the Act of April 10, 1945, No. 90, § 1, 1945 P.L. 189, 189–90, repealed the ban on receiving more than one commission. This Court addressed the impact of this change in trusts created prior to 1945 in *In re Williamson's Estate*, 368 Pa. 343, 82 A.2d 49 (1951). In *Williamson's Estate*, the testatrix appointed a corporate fiduciary as both a trustee and co-executor in her will. She died February 15, 1930; later that year, the corporate fiduciary received a commission from principal for its services as an executor. After the death of a trust beneficiary, the corporate fiduciary also requested a commission from principal for its services as a trustee. At that time, we stated the corporate fiduciary was "seeking to induce this Court to overrule a long line of cases extending for over a century and a half which established principles of fiduciary compensation." *Id.*, at 50. We recognized "fiduciaries have always been held to be entitled to fair and just

compensation for services rendered," but we tempered the suggestion of increasing compensation to trustees by also acknowledging the effects of the Great Depression and two world wars on trust beneficiaries. *Id.*, at 52–53.

Regarding the issue of whether the Act of April 10, 1945 operated retroactively so as to allow more than one commission from principal, this Court held such a retroactive application would be unconstitutional under the 14th Amendment, as the parties' "rights were vested under what necessarily is an implied contract" when the corporate fiduciary "accepted this trust in 1930 under the law as it then existed." *Id.*, at 54. Curiously, we reached this holding despite specifically stating on the same page that "[i]t may well be that present conditions demand that the system requires general revisions. If this be true, such radical change should be made by the *Legislature* and not by the Court." *Id.* (emphasis in original). It is hard to imagine how repealing the prior statute was not clear proof of the Legislature's recognition of the need for a change in the system.

Apparently in response to *Williamson's Estate*, the Legislature again amended the law and reiterated multiple commissions are acceptable. Section 2 of the Act of May 1, 1953, No. 10, 1953 P.L. 190, 191 (repealed 1972), provided:

> Whenever it shall appear either during the continuance of a trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction over his accounts shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him.

*Id.* Regarding retroactivity, Section 5 of the Act of May 1, 1953, stated:

> This act shall apply: (1) To all services heretofore rendered by any fiduciary; (2) To all services hereafter rendered by any fiduciary heretofore appointed; (3) To all services hereafter rendered by any fiduciary hereafter appointed in a

trust heretofore created; and (4) To all services hereafter rendered by any fiduciary of a trust hereafter created. *Id.* Notably, the Legislature also added a severability clause in Section 6 of the Act of May 1, 1953, which read, "If the Constitution of the United States or of this Commonwealth prevents the application of this act to services falling in one or more of the four categories listed in section 5, hereof, the act shall nevertheless apply to services falling in the other categories or category." *Id.*

This Court later addressed *Williamson's Estate* and the Act of May 1, 1953 in *In re Scott's Estate*, 418 Pa. 332, 211 A.2d 429 (1965). In *Scott's Estate*, the testator died in 1940, leaving the residue of his estate to certain trustees for life, and then to a children's hospital. The executors received a commission from principal in 1941 for their services. Upon the death of the last remaining life tenant, an account was filed, and the auditing judge approved $20,000 in additional compensation to the remaining trustees from the principal. The remainderman challenged the award, and the Orphans' Court of Philadelphia County refused to allow the additional compensation from principal. On appeal, the appellants argued the portion of *Williamson's Estate* which prohibited the retroactive application of the Act of April 10, 1945 was *dictum* and should be overruled. This Court acknowledged, "[n]either the appellants nor the appellee nor the Judges of the Orphans' Court agree as to *exactly* what *Williamson's Estate* decided, and what parts thereof were dicta and should not be followed, or in any event should be overruled." *Id.*, at 431 (emphasis in original). Regardless of whether it was *dictum,* this Court held *Williamson's Estate*'s rationale was persuasive. *Id.*, at 432. We noted the corporate trustee accepted the initial commission for its services as executor, and the law at that time made it clear that was to be deemed full compensation for services as a trustee as well; the Act of 1953, like the Act of 1945, did not change this. In reaching this holding, we stated:

[I]t appears that the compensation which a corporate fiduciary received in 1941 for all its services as executor, and its future services as trustee of a trust which covered a period

of 20 years or more was inadequate and unfair because of the long duration of the trust and the greatly increased cost of operation. However, all the parties concerned, including the present corporate fiduciary and the individual fiduciaries and the beneficiaries, knowingly took this chance—they all knew that the Statute (Act of 1917) clearly and unambiguously fixed the present and future rights of all executors-trustees to a single commission on principal, which such fiduciaries received and agreed to accept as full compensation for their combined executor and trustee fiduciary services, past, present and future.

*Id.,* at 432–33 (emphasis removed).

Two years after writing the majority opinion in *Scott's Estate,* Justice Bell again wrote the majority opinion addressing related issues in *In re Ehret's Estate,* 427 Pa. 584, 235 A.2d 414 (1967). In *Ehret's Estate,* the testator died February 17, 1913; in his will, among other bequests, he created a trust for the benefit of his children. A corporate fiduciary was later appointed as substitute trustee; it did not serve as an executor and had not received any commission at the time of its appointment. The corporate fiduciary filed an accounting, seeking an interim commission from principal for its services. The guardian *ad litem* objected to the commission, and the auditing judge refused the payment in the accounting. On appeal, the issue before this Court was "whether a trustee under a testamentary trust created prior to 1945, which was not an executor, may receive for its ordinary services as trustee an *interim* commission on principal." *Id.,* at 416 (emphasis in original). After discussing and extensively quoting *Williamson's Estate* and *Scott's Estate,* this Court distinguished those cases; unlike *Ehret's Estate,* those trustees also served as executors and were seeking double commissions. We also noted, while *Williamson's Estate* held retroactively allowing double commissions would be unconstitutional, it "did not decide or preclude as Unconstitutional the retroactive modification of the interim commission rule, since this does not involve additional compensation but merely the time for payment." *Id.,* at 420 (emphasis removed). Accordingly, we

limited *Williamson's Estate* and *Scott's Estate* to their facts and held an interim commission from principal could be paid to the corporate fiduciary, despite the fact that the law in effect at the creation of the trust generally prohibited payment of interim commissions.

The Legislature again modified the law on trustee payments when it enacted the Probate, Estates and Fiduciaries (PEF) Code, Act of June 30, 1972, No. 164, §§ 2, 3, 1972 P.L. 508, 524, 692. Section 7185, as enacted, provided:

Compensation

(a) When allowed. The court shall allow such compensation to the trustee as shall in the circumstances be reasonable and just, and may take into account the market value of the trust at the time of the allowance, and calculate such compensation on a graduated percentage.

(b) Allowed out of principal or income. Neither the fact that a fiduciary's service has not ended nor the fact that the trust has not ended shall be a bar to the fiduciary's receiving compensation for his services out of the principal of the trust. Whenever it shall appear either during the continuance of a trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction over his accounts, shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him. The provisions of this section shall apply to ordinary and extraordinary services alike.

20 Pa.C.S. § 7185(a)-(b) (1972). The first sentence of § 7185(b) was later amended to read, "the fact that a fiduciary's service has not ended or the fact that the trust has not ended *or the fact that the trust is perpetual* shall not be a bar to the fiduciary's receiving compensation for his services out of the principal of the trust." Act of February 18, 1982, No. 1982–26, § 11, 1982 P.L. 45, 76 (emphasis added). The Legislature later· added that § 7185 "shall apply to all trusts regardless of whether the trust was created before, on or after

February 18, 1982." Act of October 12, 1984, No. 1984–182, § 14, 1984 P.L. 929, 937.

The Legislature once more amended the law in 2006, deleting Chapter 71 from the PEF Code and adding Chapter 77, the Uniform Trust Act (UTA), 20 Pa.C.S. § 7701 *et seq.*[3] Section 7768 of the UTA provides:

Compensation of trustee—UTC 708

(a) **If unspecified.**—If neither the trust instrument nor a separate written agreement ... specifies the trustee's compensation, the trustee is entitled to compensation that is reasonable under the circumstances.

* * *

(c) **Entitlement not barred.**—None of the following shall bar a trustee's entitlement to compensation from the income or principal of the trust:

(1) The trust is perpetual or for any other reason has not yet terminated.

(2) The trustee's term of office has not yet ended.

(3) The trustee of a testamentary trust also acted as a personal representative of the settlor and was or might have been compensated for services as a personal representative from the principal of the settlor's estate.

(d) **Court authority.**—In determining reasonable compensation, the court may consider, among other facts, the market value of the trust and may determine compensation as a fixed or graduated percentage of the trust's market value. The court may allow compensation from principal, income or both and determine the frequency with which compensation may be collected. Compensation at levels that arise in a competitive market shall be presumed to be reasonable in the absence of compelling evidence to the contrary.

**3.** The UTA became effective November 6, 2006, which is beyond the time period for which Wachovia is seeking compensation. While this fact makes the statute inapplicable to the current matter, it is discussed by the Superior Court, the orphans' court, and all parties.

20 Pa.C.S. § 7768(a), (c)-(d). The Joint State Government Commission's comment to § 7768 is also illuminating, as it states "[s]ubsection (c)(3) repeals the contrary rule of *In re Williamson's Estate*, 368 Pa. 343, 82 A.2d 49 (1951), as to the few trusts that might still be affected by the rule." Joint State Gov't Comm'n, Report of the Advisory Committee on Decedents' Estates Laws, 82 (Apr.2005).

Against this background, the Attorney General argues we are bound by the principle of *stare decisis* to uphold *Williamson's Estate* and *Scott's Estate*'s ban on retroactively allowing more than one commission from principal. The Attorney General contends this case is factually and legally indistinguishable from those two cases and notes *Ehret's Estate* could not supersede *Williamson's Estate* or *Scott's Estate* because it did not involve multiple commissions, only interim commissions. Following the rationale of *Williamson's Estate* and *Scott's Estate*, the Attorney General claims the series of legislation allowing for multiple commissions enacted after 1945 cannot be applied retroactively to the Fridenberg trust, created in 1940. The Attorney General suggests such a retroactive application would be unconstitutional, as it would violate the beneficiaries' due process and Contracts Clause rights.

Regarding the due process claim, the Attorney General notes the trust consists of property, held by the trustees for the benefit of the beneficiaries, which, because it is a charitable trust, includes not only the Fridenberg Memorial Surgical Floor, but also the general public. The Attorney General submits the due process guarantees are implicated because a retroactive application of the various laws allowing multiple commissions will reduce the amount of trust principal, due to the increased payments to the trustee, and deprive the beneficiaries of their property. The Attorney General maintains in order for such a retroactive application to be constitutional, it must be reasonable and justified by a rational legislative purpose. The Attorney General argues the legislation in question is neither rational nor reasonable because: its retroactive application would abandon long-settled principles re-

garding trustee payment; the legislation does not limit the period for retroactive application; it is uncertain whether trustees' duties have changed as a result of changes in the law related to trust administration; trustees have the ability to request additional money from the courts for extraordinary services; and it is contrary to the public's interest in receiving the benefits of the charitable trust for as long as possible.

Borrowing from *Williamson's Estate*'s finding of an implied contract, the Attorney General also alleges allowing Wachovia to receive a commission from principal would violate the beneficiaries' Contracts Clause [4] rights. The Attorney General suggests when a settlor selects a trustee and the trustee agrees to provide services for a fee, a contract is formed, with the beneficiaries of the trust as third party beneficiaries and the law in effect at the time incorporated into its terms. Here, the law in effect at the time the will was drafted, and when the trust was accepted by Wachovia, prohibited more than one commission from principal. Therefore, the Attorney General claims any retroactive application of the laws allowing more than one commission from principal would violate the Contracts Clause because it would impair the beneficiaries' rights under the contract—the beneficiaries only expected one commission from principal would be paid to the trustee, and any additional payments not originally contemplated would reduce the funds available to them. The Attorney General goes on to suggest such an impairment of contract rights is unconstitutional, as it is unreasonable and there is no legitimate public purpose for it. Specifically, the Attorney General argues there is no special urgency for the government to interfere with contracts, and a retroactive allowance of dual commissions only benefits a private interest, mainly corporate fiduciaries, not the public interest.

In response, Wachovia suggests any concerns regarding retroactivity are unwarranted. It points out that between

4. Under the United States Constitution, states cannot enact any "law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1. The Pennsylvania Constitution carries a companion clause providing no "law impairing the obligation of contracts ... shall be passed." Pa. Const. art. I, § 17.

1998 and 2005, the years for which it is seeking compensation, § 7185 of the PEF Code governed trustee compensation. Section 7185 permits a court to award compensation to a trustee that is reasonable and just,[5] under the circumstances, and states such compensation can come from the trust principal; it also states that it applies to all trusts created before, on, or after February 18, 1982. Accordingly, Wachovia argues there is no retroactivity issue as, unlike *Williamson's Estate*, the law in effect during the entire time it is seeking compensation allows for more than one commission from principal.

Even if a retroactive application is necessary, Wachovia characterizes the Attorney General's adherence to *Williamson's Estate* as misguided because the Attorney General fails to recognize the presumption that legislative enactments are constitutional, fails to recognize the changes in constitutional law since *Williamson's Estate*, and fails to recognize the boundaries of *stare decisis*. In support, Wachovia cites several cases for the proposition that a lawfully enacted statute is presumed constitutional. It also notes the due process issue should be examined using federal due process law as it exists today, not at the time of *Williamson's Estate*. It explains the modern due process analysis of retroactivity issues began in 1976 with the United States Supreme Court case of *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), nearly 25 years after *Williamson's Estate*, Since then, it argues, the view has changed from a presumption against retroactivity to now only allowing a few exceptions to the retroactive application of civil legislation. Because of this change, and the fact that *Williamson's Estate* only addressed the 1945 legislation, Wachovia claims the Attorney General's reliance on *stare decisis* is erroneous. Furthermore, Wachovia argues a retroactive application does not offend the Due Process Clause because a trust beneficiary does not have a vested interest in the trust and, given the drastic changes in the duties of a trustee, there is a rational

5. The Attorney General does not disagree that the amount of compensation sought is reasonable and just.

basis for the Legislature to alter any interest a beneficiary has in the trust.

■■■■ As the crux of the Attorney General's argument is that we are bound by the doctrine of *stare decisis* to uphold *Williamson's Estate*, we will begin our analysis there. "The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903 n. 9 (1996) (citation omitted). Here, while it is true that the trusts in *Williamson's Estate* and the present case were both created at a time when the law prohibited more than one commission from principal, *Williamson's Estate* only analyzed the Act of April 10, 1945, not the Act of June 30, 1972 that we are being asked to review now. Although these Acts had a similar purpose, they are still different laws, and this fact alone suggests *Williamson's Estate* does not automatically control our decision in this case. Furthermore, we note "the doctrine of *stare decisis* is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877, 888 (1973). Also, "[w]hen precedent is examined in the light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of *stare decisis* but rather a fulfillment of its proper function." *Id.*, at 886–87 (citing *Smith v. State*, 93 Idaho 795, 473 P.2d 937, 943 (1970)).

As Wachovia and amicus Pennsylvania Bankers Association point out, the fiduciary landscape has changed significantly since the Fridenberg Trust was created and *Williamson's Estate* was decided. In the early part of the 20th century, trustees placed high priority on preserving the principal. *See, e.g., In re Penn–Gaskell's Estate*, 208 Pa. 342, 57 A. 714 (1904) ("The duty of a trustee is to preserve the estate...."). Because of the emphasis on maintaining the principal, there was little flexibility in what investments the trustee could make.

Indeed, early on, Pennsylvania had a "legal list" of investments that trustees could place assets in that would shield them from liability. John T. Stewart, Jr., *Legal Investments and the Prudent Man in Pennsylvania: A Study of Evolving Concepts,* 37 Temple L.Q. 121, 122 (1964). These assets were generally conservative income generators and included securities such as bonds and first mortgages. *Id.,* at 134. This legislatively-prescribed method of investing was in use until 1968, some 17 years after *Williamson's Estate,* when it was replaced by the "prudent person" standard. *See Estate of Stetson,* 463 Pa. 64, 345 A.2d 679, 685 (1975) (citing Act of June 25, 1968, P.L. 252, § 1). With the adoption of the "prudent person" standard, trustees could no longer simply pick an investment from a list in order to fulfill their obligations; they now had to use their own discretion in determining what investments to make. The "prudent person" standard was later replaced with the "prudent investor" standard and the modern portfolio theory of investment. *See* 20 Pa. C.S. § 7201 *et seq.* With each of these changes, a trustee became much more active in managing the investments, and investments with risk became more tolerable. Without the benefit of a pre-determined list, trustees must now conduct considerable research and analysis in each potential investment and in devising an overall investment strategy.[6]

 The Legislature seems to have recognized the impact these changes have had on trustees' responsibilities by virtue of its repeated pronouncements that more than one commission from principal is allowed. As detailed above, beginning in 1945 with the repeal of § 45 of the Fiduciaries Act's ban on multiple commissions, the Legislature has consistently stated trustees who also received a commission from principal as executors may be paid another commission from principal when appropriate. Accordingly, as trustee duties and responsibilities differ significantly from that time, and the Legisla-

6. This is in addition to the significant amount of new regulations governing trustees, especially corporate trustees, including the Sarbanes–Oxley Act of 2002 and the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010.

ture has made its intentions more clear regarding trustee compensation, justice demands that we no longer be bound by the considerations that led to the decision in *Williamson's Estate.*

Without the chains of *Williamson's Estate*, we now undertake our own analysis of whether a trustee, who received a commission from principal as executor of a trust created prior to the Act of 1945, may receive additional commissions from principal.[7] The law in effect during the period for which Wachovia is seeking payment was § 7185 of the PEF Code. Section 7185 allows more than one commission from principal and applies retroactively to any trust created before, on, or after February 18, 1982. In reviewing the constitutionality of a statute, we presume the Legislature did not intend for the statute to violate either the United States or this Commonwealth's Constitution. "[W]e uphold the constitutionality of a statute unless it 'clearly, palpably, and plainly violates constitutional rights.'" *In the Interest of F.C. III*, 607 Pa. 45, 2 A.3d 1201, 1221 (2010) (citation omitted). Furthermore, "[a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *DePaul v. Commonwealth*, 600 Pa. 573, 969 A.2d 536, 545 (2009) (citation omitted).

As the Superior Court noted, although *Williamson's Estate* should not constitute our analysis, it can "provide analytic principles to apply to the subsequent legislation." *Estate of Fridenberg*, 982 A.2d 68, 73 (Pa.Super.2009). *Williamson's Estate* held the Act of 1945 could not be applied retroactively because it would violate the 14th Amendment's Due Process Clause. We observe, "[t]he Due Process Clause ... protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification suffi-

---

7. We are not persuaded by Wachovia's argument that no retroactive analysis need be performed because it is merely seeking payment for work performed during a time when the law specifically allowed for more than one commission from principal. Both the Act of 1953 and the Act of 1972 include provisions stating they apply retroactively; we must determine if the retroactive application is valid.

cient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Landgraf v. USI Film Products*, 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citation omitted). However, "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations ... even though the effect of the legislation is to impose a new duty or liability based on past acts." *Bible v. Commonwealth of Pa., Department of Labor and Industry*, 548 Pa. 247, 696 A.2d 1149, 1155 (1997) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). In evaluating retroactive legislation, " '[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process': a legitimate legislative purpose furthered by rational means." *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984)).

 Here, the Legislature's purpose in allowing more than one commission from principal was to ensure trustees received reasonable compensation for their services. As detailed above, the responsibilities of trustees have changed drastically since the creation of the Fridenberg trust. At the time of its formation, trustees, in order to meet their legal duties, merely had to choose an investment from a legislatively-created list, then sit back and clip coupons. Since then, the legal list has been abandoned, and trustees must now rely on their own discretion and exercise ongoing discretion in determining what investments should be undertaken. The extinction of legal lists alone would likely be enough to justify a change in trustee compensation; combined with the many other changes to the trustee landscape since 1940, the Legislature had a legitimate purpose in retroactively allowing additional trustee compensation from principal.

 Furthermore, retroactively allowing additional compensation to trustees overseeing trusts created when only a

single commission was allowed is a rational means to accomplish the Legislature's purpose. It would make no sense to allow trustees administering trusts after February 18, 1982 to receive more than one commission from principal, but not trustees administering trusts created before February 18, 1982. *See Bible*, at 1156 (holding retroactive application was rational means of implementing legitimate legislative purpose because, if legislation was only prospective, certain claimants would obtain advantage over others based on timing alone). The trustees for both of those trusts have the same responsibilities, and they should be compensated similarly, not arbitrarily. Therefore, we find retroactively allowing trustees more than one commission from principal does not violate the 14th Amendment's due process protections.

Likewise, we find no violation of the beneficiaries' Contracts Clause rights. In order to determine whether a Contracts Clause violation exists, it must first be determined that a contract exists. *See General Motors*, at 186–87, 112 S.Ct. 1105 (first step in deciding if state law has substantially impaired contract is to determine whether contractual relationship exists). It should also be noted that "the Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

The Attorney General takes *Williamson's Estate*'s finding of an implied contract and extrapolates that to conclude a settlor and his designated trustee enter into a contractual relationship, with the beneficiaries of the trust as third party beneficiaries.[8] The Attorney General cites *Estate of Cahen*, 483 Pa. 157, 394 A.2d 958 (1978), to support its argument that a contract was formed between the parties to the trust. However, *Estate of Cahen* is distinguishable from the present

8. Regarding the *Williamson's Estate* holding, Justice Bell wrote in his dissenting opinion, "Concededly there never was any written or oral or specific contract; and the contract which the majority implies and which it refrains from defining is nothing but a creation or invention of the Court." *Williamson's Estate*, at 57 (Bell, J., dissenting) (emphasis removed).

case, as the trust in *Estate of Cahen* expressly detailed when and how the trustee was to be paid.[9] It was in this context that this Court found a "trust contract" existed. We find no such contract, sufficient to support a Contracts Clause claim, exists here.

The Fridenberg trust contains no compensation clause, and, accordingly, trustee compensation was left largely to the relevant statutes and the discretion of the courts. As the parties themselves did not specify the terms of compensation in the trust, we would be hard-pressed to conclude a legislative enactment impaired any parties' contractually-based expectations regarding trustee compensation. If the beneficiaries felt Wachovia was seeking unreasonable compensation for its services, they would have had to raise that argument to the court when Wachovia sought compensation.[10] Here, as the Superior Court aptly noted, the beneficiaries are not objecting to Wachovia's request for payment, which makes the Contracts Clause claim seem even more tenuous. Because no contract exists, there can be no violation of the Contracts Clause.

As it is undoubtedly the Legislature's intent to do away with the prohibition against receiving more than one commission from principal and its enactments regarding the same are constitutional, Wachovia is entitled to request additional commissions from principal. Accordingly, the order of the Superior Court is affirmed.

Order affirmed.

Chief Justice CASTILLE, Justices BAER, TODD, McCAFFERY, and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion, in which Justice ORIE MELVIN joins.

9. Article 12 of the trust stated the corporate trustee would be paid three-and-one-half percent of the income generated and could receive compensation from the principal of between one and three percent, subject to the approval of a designated individual trustee.

10. Similarly, if the beneficiaries felt Wachovia was not properly administering the trust, the proper cause of action would be for breach of fiduciary duty, not breach of contract.

Justice SAYLOR, concurring.

I join the majority opinion, but would place the main focus on the sea change in federal due process law governing the constitutionality of enactments retroactively affecting contract and property rights, as manifested in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), and its progeny. *See id.* at 16–17, 96 S.Ct. at 2893 (explaining that such legislation is constitutional if it satisfies the rational-basis test). In the application of the now prevailing standard, I find much force in the arguments of Appellant and its *amicus* to the effect that:

> material advances in the law of trusts ... have given beneficiaries appreciably more rights than they ever could have reasonably expected sixty years ago. [*In re Williamson's Estate*, 368 Pa. 343, 82 A.2d 49 (1951) ] thus inadvertently created an artificial and anachronistic legal rule whereby the law is "fixed" in one respect only, but not in all other respects: beneficiaries can now hold trustees to significantly higher standards, and hold them legally accountable for making a whole host of additional decisions, yet not compensate the trustee commensurate with those increased responsibilities and risks.

Brief for *Amicus* Pa. Bankers Ass'n at 14 (emphasis omitted). In this regard, I fully agree with the undisputed proposition that a rational basis undergirds the Legislature's sustained efforts to modernize compensation rules applicable to so-called "*Williamson's Estate* trusts" to account for trustees' manifestly increased responsibilities and financial exposure.

Justice ORIE MELVIN joins this concurring opinion.