[J-10-2016] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| MORRISON INFORMATICS, INC., ANTHONY M. GRIGONIS, AND MALCOLM H. MORRISON | : | No. 18 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court at No. 467 MDA 2013 dated |
| | : | August 12, 2014 Affirming in Part and |
| v. | : | Vacating in Part the Order entered |
| | : | February 20, 2013 in the Cumberland |
| | : | County Court of Common Pleas, Civil |
| MEMBERS 1ST FEDERAL CREDIT | : | Division, at No. 2011-04636 and |
| UNION, MARK ZAMPELLI, AND SCOTT | : | remanding with instructions. |
| DOUGLASS | : | |
| | : | |
| | : | |
| | : | ARGUED: November 17, 2015 |
| APPEAL OF: MEMBERS 1ST FEDERAL | : | RESUBMITTED:  January 20, 2016 |
| CREDIT UNION | : | |

**CONCURRING OPINION**

**JUSTICE WECHT**                                          **Decided: May 25, 2016**

*Stare decisis*, a principle as old as the common law itself, embodies the idea that, "for the sake of certainty, a conclusion reached in one case should be applied to those [that] follow, if the facts are substantially the same, even though the parties may be different." Estate of Fridenberg v. Commonwealth, 33 A.3d 581, 589 (Pa. 2011) (quoting Commonwealth v. Tilghman, 673 A.2d 898, 903 n.9 (Pa. 1996)). *Stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Buckwalter v. Borough of Phoenixville, 985 A.2d 728, 730-31 (Pa. 2009) (quoting Stilp v. Commonwealth, 905 A.2d 918, 954 n.31 (Pa. 2006)).

Still, this Court and innumerable others have remained mindful of Justice Louis Brandeis' admonition that *stare decisis* "is not a universal, inexorable command." State

of Washington v. W.C. Dawson & Co., 264 U.S. 219, 237 (1924) (Brandeis, J., dissenting). *Stare decisis* is not "a vehicle for perpetuating error, but rather a legal concept [that] responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." Buckwalter, 985 A.2d at 731 (quoting Estate of Grossman, 406 A.2d 726, 731 (Pa. 1979)). As the United States Supreme Court recently observed, "[w]hat we decide, we can undecide. But *stare decisis* teaches that we should exercise that authority sparingly." Kimbel v. Marvel Entm't, LLC, 135 S.Ct. 2401, 2415 (U.S. 2015).[1] "When precedent is examined in the light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of *stare decisis* but rather a fulfillment of its proper function." Fridenberg, 33 A.3d at 590 (quoting Ayala v. Phila. Bd. of Pub. Educ., 305 A.2d 877, 886-87 (Pa. 1973)). Among appropriate considerations in assessing the wisdom of departing from precedent are "workability," Payne v. Tennessee, 501 U.S. 808, 827 (1991), "the antiquity of the precedent, the reliance interests at stake, and . . . whether the decision [or decisions were] well[-]reasoned." Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 363 (2010) (quoting Montejo v. Louisiana, 556 U.S. 778, 792-93 (2009)).

I join the majority. I write separately to disavow any suggestion that the decision we reach today squares with our precedent. See, e.g., Maj. Op. at 11 (acknowledging "tension" between its approach and a number of our prior precedents but opining that "there simply is no precedent controlling substitution in a scenario involving a

---

[1]    In mapping the boundaries of a jurisprudential matter like *stare decisis* as applied to state law, the United States Supreme Court's practices and precedents do not bind this Court. However, the precept is honored more or less universally in the Anglo-American legal tradition, and the High Court's interpretation of the principle has persuasive value.

bankruptcy trustee").[2]    I perceive in today's ruling a significant abrogation or modification of the predominant body of our most on-point case law. To leave that aspect of this case unacknowledged is to risk confusion. Lawyers and judges might read today's decision as forcing them to strive mightily in an attempt to reconcile disparate precedents, including this one. They need not do so. No principled reconciliation is available. Today, the Court departs from our prior, formalistic decisions. The interests of justice provide ample warrant for doing so.

This case hinges upon whether the trustee is a "new party" as that term has been employed in Pennsylvania.[3] The weight of Pennsylvania precedent leaves it difficult to conclude that the trustee is anything but a new party as we have defined that term previously. The majority does not suggest otherwise. In heretofore undisturbed precedent going back more than a century, "new party" status, and the consequent preclusion of party substitution after the running of the statute of limitations, was found despite the fact that the party in question was merely seeking to substitute herself in a representative capacity for herself as an individual.

---

[2]    In tandem with this observation, the majority alludes to the time-honored principle that, in deriving rules from past precedents, we must read the prior holdings "against their facts." Maj. Op. at 11. This is true as far as it goes. However, it does not cure the complicating factor that few rules can be extracted when comparisons of the facts in one case to the next are conducted at a microscopic level, because any two cases rarely will be factually identical. Hence, merely citing this principle does not justify distinguishing cases on factual differences that are immaterial to the legal question presented. Were it so, *stare decisis* would be of no service whatsoever in promoting the "predictable, and consistent development of legal principles." Buckwalter, 985 A.2d at 731. To the contrary, an overly particular parsing of prior precedents in search of esoteric distinctions of fact confounds that objective. See Benjamin N. Cardozo, The Nature of the Judicial Process 149 (1921) ("The labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who had gone before him.").

[3]    The parties' arguments indicate that this view of the case is not inconsistent with their own, although they pursue numerous other lines of analysis.

In La Bar v. N.Y., S. & W. R. Co., 67 A. 413 (Pa. 1907), the case that is most relevant, a widow sued her late husband's employer in her individual capacity after her husband was killed in a work-related accident in New Jersey. At or near the time of trial, after the statute of limitations had run, the widow sought to amend the caption to identify herself as administratrix for the decedent's estate. The trial court declined the amendment on the basis that it introduced a new party and, thus, a new cause of action after the limitations period had run. Id. at 413.

On review, this Court found that it must apply New Jersey law, which required that suit be brought in the name of the administratrix of the decedent's estate for the benefit of the widow and the decedent's children. Thus, suit originally had been filed by the wrong party. This Court held that, when the widow tried to amend the caption, she had commenced a new action with a new party-plaintiff after the running of the statute of limitations. We deemed this impermissible:

> Unless the amendment is allowed the right of action does not exist in the plaintiff. The answer to this question depends upon whether a new cause of action was introduced or new parties were permitted to intervene. It has been many times decided that a new cause of action cannot be introduced, or new parties brought in, or a new subject-matter presented, or a vital and material defect in the pleadings be corrected, after the statute of limitations has become a bar.

La Bar, 67 A. at 414 (citing cases). Thus, even where the embodiment of the plaintiff lay in the same woman, a material change in her capacity rendered her a new claimant bringing a new cause of action. Her suit was barred by the statute of limitations.

In light of this undisturbed precedent, I struggle to discern how we would not be obligated to reach the same conclusion with regard to the trustee in this matter were we to apply *stare decisis*, notwithstanding the outlying cases characterized briefly by the majority as existing "in tension" with the above-cited precedents and others. See Maj. Op. at 11. If substituting the widow as administratrix in a "representative capacity" for

the widow in her individual capacity (in both incarnations for her own benefit as widow and ostensibly for the benefit of her children) was impermissible, then the substitution in this case of an entirely different albeit representative party on behalf of a debtor in bankruptcy[4] necessarily would seem to entail the insertion of a new party, and consequently a new cause of action under the dictates of La Bar and numerous other cases.[5]

This brings us to the larger question: Is a departure warranted in this case? In my view—and implicitly in the majority's—justice is disserved by the strict application of the rule that the addition of a "new party," so defined, triggers a "new cause of action" that is precluded by the limitations period when it has run before the attempted substitution. Over time and in this case, the rule has lacked the flexibility necessary to maximize the likelihood that the outcome of litigation will be resolved justly on the merits rather than expediently based upon rigid application of a formalistic rule. Many other jurisdictions have eschewed this formalism, in deference to equitable principles that we, too, generally honor. As noted by the majority, in some instances our precedents have

---

[4]     It is telling, perhaps, that we commonly refer to the collective assets of a debtor in bankruptcy as an "estate."

[5]     See, e.g., Kille v. Ege, 82 Pa. 102, 110 (1876) (denying substitution after the limitations period of parties with title to the property in an ejection action for parties without title upon the basis that the amendment "depriv[ed] the opposite party of [a] valuable right" but without suggesting that new substantive claims were raised or the identification of any prejudice); Garman v. Glass, 46 A. 923, 925-26 (Pa. 1900) ("Rights of action in different capacities, even though in the same individual, cannot be mixed and interchanged."); cf. Mumma v. Phila. & Reading Ry. Co., 119 A. 287, 288 (Pa. 1922) (citing La Bar for the proposition that a change in party from individual to representative cause of action "is a change in the cause of action, and will not be allowed after the statute of limitations has become a bar"); Holmes v. Penna. R.R. Co., 69 A. 597, 598 (Pa. 1908) (same). But see Usner v. Duersmith, 31 A.2d 149, 150 (Pa. 1943) (distinguishing La Bar on narrow grounds and allowing post-limitations substitution from individual to representative status).

led to results that fly in the face of the liberal allowance of amendment and substitution prescribed by Pa.R.C.P. 1033, our case law thereunder, and Pennsylvania precedents antedating that Rule. See, e.g., Maj. Op. at 11 (acknowledging that "the Court's precedent has taken a hard line relative to proceedings errantly initiated against deceased persons"). Furthermore, while Rule 1033 does not expressly allow post-limitations period substitution, that Rule conspicuously does not preclude it. See id. at 10. As well, our former precedents dealing with the broader question regarding when a substitution entails the addition of a "new party," at least in this court, are quite old, have not recently been reaffirmed, and are arguably "unworkable," at least in some cases, as the confusion and surfeit of legal theories characterizing the instant case's path through the courts aptly demonstrates. See Fridenberg; Citizens United, *supra*.

I join the majority's reasoning based upon the sound policy concerns that it identifies. I share the majority's view that those jurisdictions employing more liberal rules than we have recognized in the past have found that their approach serves the interests of justice. See Maj. Op. at 10-11 & n.5. I do not perceive that our ruling reflects an unwise or unduly precipitous departure from prior precedent. Rather, it embraces a degree of jurisprudential housekeeping that is consistent with the letter and spirit of our procedural rules and statutes of limitations and that fits well with the criteria we have cited in the past as warranting departures from *stare decisis*.

I write separately in the hope of sparing the bench and bar from a futile search for harmony amongst our precedents. There is little to be found. This decision marks a departure. It is informed most by the desuetude and unfortunate formalism of a strict,

circumstance-indifferent limitation upon the substitution of representative parties once the statute of limitations has run. *Cessante ratione legis, cessat ipsa lex.*[6]

The liberal, case-specific rubric that appears to reflect something approaching a consensus in other jurisdictions[7] comports with our procedural rules' stated objective of ensuring the just resolution of cases upon their merits. See Pa.R.C.P. 126 ("The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable.").[8] Today's decision protects parties innocent of whatever misstep created the circumstance requiring substitution, such as the creditors in bankruptcy in the instant matter, from the unjust consequences of that error. The law of this Commonwealth is the better for it.[9] "Wisdom too often

---

[6]     Where stops the reason, there stops the rule. See Duhaime's Law Dictionary, www.duhaime.org/LegalDictionary/C/CessanteRationeLegisCessatIpsaLex.aspx (last reviewed April 22, 2016) ("[T]he reason for a law ceasing, the law itself ceases."); see also Commonwealth v. Ladd, 166 A.2d 501, 506 (Pa. 1960) ("A rule becomes dry when its supporting reason evaporates: *cessante ratione legis cessat lex*."); Beardsley v. City of Hartford, 50 Conn. 529, 542 (1883) ("[N]o law can survive the reasons on which it is founded. It needs no statute to change it; it abrogates itself. If the reasons on which a law rests are overborne by opposing reasons, which in the progress of society gain a controlling force, the old law, though still good as an abstract principle, and good in its application to some circumstances, must cease to apply as a controlling principle to the new circumstances.").

[7]     But see, e.g., Bibbs v. Cmty. Bank, 278 S.W.3d 564 (Ark. 2008) (denying post-statute of limitations substitution of bankruptcy trustee because original suit brought in the name of the debtor in bankruptcy was void *ab initio*).

[8]     To that end, Rule 126 further provides that "[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

[9]     Even courts applying F.R.C.P. 17 and its state analogs do not allow amendment in *all* cases, even when to do so would not change the claims raised or prejudice the adverse party. See Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 563 (3d Cir. 2008) (holding that substitution may not be warranted where, *e.g.*, the omitted plaintiff was readily ascertainable before the end of the limitations period and no basis for the mistake is ventured and noting that Rule 17(a)(3) seeks to "prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable (continued…)

never comes," wrote Justice Felix Frankfurter, "and so one ought not to reject it merely because it comes late."  Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 600 (U.S. 1949) (Frankfurter, J., dissenting).

---

(…continued)
mistake has been made" but "is not a provision to be distorted by parties to circumvent the limitations period").  While such a circumstance may lurk in the instant matter, the issue has not been raised and, thus, has no place in our analysis.  Nonetheless, I would leave the door open to the application of such a limitation in a future case as a hedge against vexatious conduct.