J-S77010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF KENNETH HIXON, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: KATHRYN E. DUNKLEBARGER | |
| | No. 899 MDA 2017 |

Appeal from the Order Entered May 4, 2017
In the Court of Common Pleas of Fulton County
Civil Division at No(s): 14 of 2016 OC

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 12, 2018**

Kathryn E. Dunklebarger, Administratrix of the Estate of Kenneth R. Hixon, appeals from the order, entered on May 4, 2017, that directed her to file an account of her administration of the Estate in response to Betty Sturgeon's Petition for Citation to Show Cause Why an Account Should Not be Filed ("Petition"). After review, we affirm.

The trial court's opinion that accompanied its order that is the subject of this appeal sets forth the factual and procedural history of this case, as follows:

> Kenneth R. Hixon, resident of Fulton County, Pennsylvania, died testate on September 20, 2014. Mr. Hixon was not married and had no children, but maintained a will dated September 20, 20[0]4. On October 10, 2014, Mr. Hixon's Will was accepted for probate by the Register of Wills of Fulton County, and Letters of

_____

[*] Former Justice specially assigned to the Superior Court.

Administration were granted to Kathryn E. Dunklebarger as Administratrix.

Mr. Hixon's Will had bequeathed the entirety of the Estate to his brother, David K. Hixon, and also named him to serve as Executor of the Estate. However, David K. Hixon predeceased Mr. Hixon on August 8, 2012, leaving David Hix[]on's estate to pass to his children. Betty Sturgeon, who filed the Petition before the [c]ourt, is one of David K. Hixon's children.[1] Ms. Sturgeon served as Mr. Hixon's caregiver for fifteen years and was designated by Mr. Hixon as beneficiary to his Allianz and Modern Woodsman policies. The present conflict arises because the Estate has not paid inheritance taxes due on these two policies, which Ms. Sturgeon believes must be paid under the terms of Mr. Hixon's Will.

In response to the Estate's failure to pay inheritance taxes on these policies, Ms. Sturgeon filed a Notice of Claim in the amount of $142,497.20, against the Estate on September 15, 2015, making her a creditor to the Estate.[1] Presently, Ms. Sturgeon requests an accounting of the Estate under 20 Pa. C.S.[] §3501.1, which states that "a personal representative may be cited to file an account at any time after the expiration of six months from the first complete advertisement of the original grant of letters." Eleven months have passed since the letters were original[ly] granted to Ms. Dunklebarger, who has never filed an account of the Estate.

> [1] This amount accounts for "the inheritance taxes due, claims for reimbursement for payments made by Ms. Sturgeon on behalf of Mr. Hixon, and tangible personal property belonging to Ms. Sturgeon which was located at Mr. Hixon's home at the time of his death."

After a phone conference on February 8, 2016, the parties agreed that the [c]ourt shall decide whether Ms. Sturgeon has

---

[1] Upon further review by the trial court in response to Ms. Dunklebarger's motion for reconsideration, the court recognized its error and struck the statement that Ms. Sturgeon is a child of Mr. Hixon's brother. *See* Trial Court Opinion #2 (TCO #2), 6/30/17, at 2.

standing to petition for an accounting on the papers alone, without briefing or hearing. Therefore, this matter is now ripe before this Court.

Trial Court Opinion #1 (TCO #1), 5/4/17, at 1-2. Based on the tax clause contained in Mr. Hixon's will,[2] the trial court concluded that "Ms. Sturgeon had standing to petition [the trial court] to compel an accounting because she had a valid claim against the Estate to pay the inheritance taxes associated with the Modern Woodsman and Allianz policies." *Id.* at 4. The accompanying order directed "that the Executor of the Estate of Kenneth R. Hixon, Kathryn E. Dunklebarger, must file an account of her administration of the Estate within thirty (30) days or receipt of this Order." Order, 5/4/17.

Thereafter, on May 19, 2017, Ms. Dunklebarger filed a motion for reconsideration. On May 31, 2017, the court signed an order directing Ms. Sturgeon to file a response to the motion; however, that order was not entered on the docket until June 6, 2017. Despite this delay, Ms. Sturgeon had previously filed her response to Ms. Dunklebarger's motion on May 31,

_____

[2] The tax clause in Mr. Hixon's will states:

> I direct my hereinafter named Executor … to pay all estate, inheritance, succession and other transfer taxes, of whatever nature and by whatever jurisdiction imposed, and interest and penalties in respect thereto, assessed against my estate or payable by reason of my death, with respect to any and all property, life insurance and other interests comprising my estate for death tax purposes, whether or not such property or interests pass under this will or any codicil thereto, without reimbursement as if such taxes were administration expenses.

TCO #1 at 2-3. *See also* Petition, Exh. A.

2017. Additionally, Ms. Dunklebarger filed an appeal to this Court on June 2, 2017. She also filed a first and intermediate accounting for the Estate on June 6, 2017, as directed by the court in its May 4, 2017 order.

The court then issued an order on June 8, 2017, in connection with Ms. Dunklebarger's appeal, directing her to file a statement of errors complained of on appeal. She complied on June 19, 2017. Next, on June 20, 2017, the court issued an order setting forth a timeline, which encompasses the documents and orders we described above. *See* Order, 6/20/17. The court also discussed that it could decide Ms. Dunklebarger's motion for reconsideration despite her filing of an appeal to this Court. *Id.* Specifically, the court set forth what it termed "findings":

a. Generally, if an appeal is taken, the trial court may no longer proceed further in the matter. Pa.R.A.P. 1701(a).
b. However, the trial court is empowered to "Grant reconsideration of the order which is the subject of the appeal or petition if an application for reconsideration of the order is filed in the trial court or other government unit within the time prescribed by law." Pa.R.A.P. 1701(b)(3)(i).
c. "A party aggrieved by the decision of the court may file a motion for reconsideration in accordance with Pa.R.A.P. 1701(b)(3). If the court does not grant the motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never been presented to the court." Pa.R.C.P. 1930.2.
d. These Rules seem to clearly empower this [c]ourt to decide the Administratrix's Motion for Reconsideration despite the filing of a Notice of Appeal.
e. However, it appears to the [c]ourt that any further action on confirming the First and Intermediate Accounting filed by the Administratrix would be a violation of Pa.R.A.P. 1701(a).

Therefore, **IT IS HEREBY ORDERED** that the confirmation of the First and Intermediate Account filed by the

Administratrix on June 5, 2017 is hereby STAYED until further Notice.

**IT IS FURTHER ORDERED** that this [c]ourt will decide [Ms. Dunklebarger's] Motion for Reconsideration within thirty (30) days of the date of this order.

*Id.* (footnote omitted; emphasis in original).

We note that Ms. Dunklebarger filed a timely appeal on June 2, 2017, from the May 4, 2017 order, but that the trial court's June 20, 2017 order that appears to grant reconsideration was not timely. We explain the effect of these circumstances by quoting **PNC Bank, N.A. v. Unknown Heirs**, 929 A.2d 219 (Pa. Super. 2007), which states:

[I]t is well settled that "a court upon notice to the parties may modify or rescind any order within 30 days after its entry … if no appeal from such an order has been taken or allowed." 42 Pa.C.S.A. § 5505. "Under section 5505, the trial court has broad discretion to modify or rescind an order, and this power may be exercised *sua sponte* or invoked pursuant to a party's motion for reconsideration." **Haines v. Jones**, 830 A.2d 579, 584 (Pa. Super. 2003). "The trial court may consider a motion for reconsideration only if the motion for reconsideration is filed within thirty days of the entry of the disputed order." **Id.** "The mere filing of a motion for reconsideration, however, is insufficient to toll the appeal period." **Valley Forge Center Associates [v. RIB-It/K.P., Inc.]**, 693 A.2d [242,] 245 [Pa. Super. 1997)]. "If the trial court fails to grant reconsideration expressly within the prescribed 30 days, it loses the power to act upon both the [motion] and the original order." **Id.**

*Id.* at 226.

Additionally, we recognize that

Rule 1701(b)(3) indicates that when the trial court **expressly** grants reconsideration of an order that is the subject of an appeal, such grant of reconsideration renders the previously filed notice of appeal inoperative. Thereafter, the time for filing an appeal begins to run anew from the point the trial court enters a

- 5 -

decision on reconsideration, whether or not such decision constitutes a reaffirmation of the prior, original[] order.

*Haines*, 830 A.2d 583 (emphasis in original).

Thus, based upon the facts as set forth above, we conclude that the trial court's grant of reconsideration is of no moment because of its untimeliness,[3] but that Ms. Dunklebarger's protective appeal remains in effect. Therefore, we have jurisdiction to consider Ms. Dunklebarger's appeal from the court's order entered on May 4, 2017. We do, however, refrain from considering anything in the record related to the court's decision upon reconsideration.

In her brief to this Court, Ms. Dunklebarger states her issues as follows:

1. Whether the lower court, in holding that the decedent's will unambiguously manifested an intention that the burden of inheritance tax on non-probate property be borne by his estate rather than the transferee of the non-probate assets, failed to consider the latent ambiguity in the decedent's will arising from the fact that at the time the decedent's will was written, the beneficiary of the non-probate property and of his estate was the same person[?]

_____

[3] However, we recognize that on June 30, 2017, the trial court issued an opinion containing its review of the three issues that Ms. Dunklebarger raised in her motion for reconsideration. The three issues concern: (1) an "erroneous factual statement as to [Ms.] Sturgeon's parentage[,]" (2) a "factual statement as to when [Ms.] Sturgeon was appointed beneficiary of the two policies[,]" and (3) the "conclusion of law that [Ms.] Sturgeon is a beneficiary and has standing to petition for an accounting[.]" *See* TCO #2, at 2, 6.

2. Whether the lower court erred in holding that the language of the will unambiguously manifests an intention that the estate pay inheritance tax obligations on non-probate assets out of estate funds[?]

Ms. Dunklebarger's brief at 4.

The trial court's May 4, 2017 opinion addresses these issues, stating:

[T]he plain language of Mr. Hixon's Will is clear. The Executor of the Estate is directed to pay inheritance taxes assessed against monies payable upon Mr. Hixon's death (i.e. life insurance) regardless of whether those monies have passed under the Will. Moreover, the inheritance tax is to be paid from the Estate as an administrative expense. Ms. Sturgeon is the beneficiary of policies which have become payable upon Mr. Hixon's death as life insurance or certificates of annuities, and any resulting inheritances taxes should therefore be paid "as if such taxes were administration expenses." Contrary to the Estate's allegations, Mr. Hixon's intent was clear tha[t] any inheritance taxes resulting from a policy payable upon his death should be paid by the [E]state, even [though] that policy was not conveyed within the Will itself. Moreover[,] the source of the funds to pay the inheritance tax is clearly the Estate as inheritance taxes are meant to be treated as an administration expense.

The Estate counters this plain language, arguing that because Ms. Sturgeon was not a contemplated beneficiary of the tax clause when the Will was executed, she cannot benefit from that provision. However, the Estate improperly characterizes Corso's Estate in support of this argument. In Corso's Estate, the decedent's will named only the decedent's first wife as the beneficiary of the pay-tax provision. 431 A.2d 253, 273 (Pa. 1981). The Court held that the decedent's second wife could not benefit from this provision since the decedent clearly had not intended or planned to get divorced and remarried and have that same pay-tax provision apply to his second wife. The case at bar is readily distinguishable. The tax clause in Mr. Hixon's Will is a general provision accounting for the payment of not only inheritance[] taxes, but also estate, succession and other death transfer taxes[,] which are made payable by Mr. Hixon's passing. Mr. Hixon did not limit this tax clause provision to an individual person as was the case in Corso's Estate. Rather, this extremely general tax clause sought to cover taxes owed by any

beneficiary and recipient of his life insurance or certificates of annuities policies. The [c]ourt also notes that the Will was executed in 2004, while the record is silent as to when Ms. Sturgeon was named a beneficiary to the two policies. As such, this [c]ourt cannot draw the conclusion that Ms. Sturgeon's existence was not contemplated at the time the Will was executed.

Since Ms. Sturgeon is in fact a beneficiary and has a corresponding valid claim against the Estate for monies owed to her to pay the inheritance taxes on the two policies from which she benefits, she has standing to petition this [c]ourt to compel an accounting.

TCO #1, at 3-4 (citations to the record and a footnote omitted).

In addressing the issues Ms. Dunklebarger raises, we are guided by the following:

The effect of a tax clause contained in a will involves a question of law. *In re Estate of Allen*, 960 A.2d 470 (Pa. Super. 2008). This Court's scope of review is plenary and our standard of review is *de novo.* *In re Fridenberg*, 613 A.2d 281, 33 A.3d 581, 584 (Pa. 2010).

In interpreting a will, this Court has stated:

The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail. In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed, only if the testator's intent remains uncertain may a court then resort to the general rules of construction. The words of a will are not to be viewed in a vacuum but rather as part of an overall testamentary plan.

When interpreting a will, we must give effect to word and clause where reasonably possible so as not to render any provision nugatory or mere surplusage. Further, technical words must ordinarily be given

their common legal effect as it is presumed these words were intentionally and intelligently employed, especially where they are used by someone learned in probate law.

Courts are not permitted to determine what they think the testator might or would have desired under the existing circumstances, or even what they think the testator meant to say. Rather, the court must focus on the meaning of the testator's words within the four corners of the will. Finally, a court may not rewrite an unambiguous will.

*In re Estate of Schultheis*, 747 A.2d 918, 922-23 (Pa. Super. 2000) (quoting *In re Estate of Rider*, 711 A.2d 1018, 1021 (Pa. Super. 1998)).

*In re Estate of Davis*, 128 A.3d 819, 821 (Pa. Super. 2015).

We agree with the trial court's determination. The language of the will and, in particular, the tax clause is clear and unambiguous. Specifically, the tax clause directs that all taxes are to be paid by the Estate, even if the funds from the policies are not conveyed by the will, and that the payment of the taxes should be treated as administration expenses. The fact that Ms. Sturgeon was not the intended beneficiary at the time the will was initially signed by the decedent in 2004 does not convert a clear intent to a latent ambiguity. "Great deference is given to the meaning of the words in the four corners of the will, and a court cannot determine what the testator might have desired by considering extrinsic evidence." *Hennessey v. Hennessey*, 883 A.2d 649, 652 (Pa. Super. 2005). Moreover,

[a] latent ambiguity exists when extrinsic evidence renders the majority of a written document uncertain, even though the plain meaning of the document seemed clear. However, the extrinsic evidence must only serve to clarify ambiguous terms within the

- 9 -

will. It "cannot be received as evidence of testator's intention independent of the written words employed."

*Id.* at 652-53 (citations omitted).

Based upon the facts as ascertained by the trial court and the law set forth above, we cannot rewrite Mr. Hixon's will to comport with what Ms. Dunklebarger asserts was his intent. Rather, we conclude that the trial court correctly determined that there is no ambiguity in the will and that the tax clause covered taxes owed by any beneficiary including the recipient of the Allianz and Modern Woodsman policies. Accordingly, we affirm the trial court's order from which Ms. Dunklebarger appealed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/12/2018

- 10 -